UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL M., | Case No.: 24-cv-01777-W-JLB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MERITS BRIEF** |
| FRANK J. BISIGNANO, Acting Commissioner of Social Security,[1] | |
| Defendant. | **(ECF No. 14)** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.2(d) of the United States District Court for the Southern District of California.

On October 4, 2024, plaintiff Michael M. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI") benefits.  (ECF No. 1.)

---

[1] Frank J. Bisignano, the Acting Commissioner of Social Security as of May 6, 2025, is hereby substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

1

Now pending before the Court and ready for decision is Plaintiff's merits brief.[2] (ECF No. 14.)  The Commissioner filed an opposition (ECF No. 16), and Plaintiff filed a reply (ECF No. 17).  Upon review, the Court ordered supplemental briefing on an issue not directly addressed by the parties.  (ECF No. 20.)  In response, both parties filed supplemental briefs.  (ECF Nos. 22, 23.)  For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's merit's brief be **GRANTED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

On or about April 1, 2019, Plaintiff filed an application for SSI benefits under title XVI of the Social Security Act.  (Certified Administrative Record ["AR"] 16, 213–17.)  On May 24, 2019, the Social Security Administration ("SSA") notified Plaintiff that he was ineligible for SSI benefits due to excess income.  (AR 16, 40–52.)  After Plaintiff's request for reconsideration was denied, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR 53–63.)  An administrative hearing was held on June 10, 2021.  (AR 22–37.)  Plaintiff appeared at the hearing with counsel and testified on his own behalf.  (AR 22–37.)

As reflected in her August 10, 2021, hearing decision, the ALJ found that Plaintiff was ineligible for SSI benefits, pursuant to section 1611 of the Social Security Act, because of his countable income during his period of eligibility.  (AR 19.)  Plaintiff claims his complaint is timely because he did not obtain a copy of the Appeals Council's final decision until September 15, 2024, and this action was filed less than 60 days thereafter.  (ECF No. 1 ¶ 6.)

///

---

[2]    The Court will construe Plaintiff's motion for summary judgment as his merits brief under Local Civil Rule 7.1(e)(6)(e) and the Court's December 3, 2024, Order setting a briefing schedule.  (*See* ECF No. 11 at 2.)

24-cv-01777-W-JLB

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ determined that during the period of eligibility, Plaintiff had countable income that made him ineligible for SSI benefits. (AR 18.) During the period of eligibility, the SSA stated that Plaintiff received $2,600 in miscellaneous income. (AR 18.)[3] Plaintiff argued that these payments "constituted actual payments from an excluded special needs trust on [his behalf] and were therefore not income." (AR 18.)

The ALJ noted that, although the SSA "has recognized [Plaintiff's] special needs trust is an excluded resource," it "contends that [Plaintiff] receives distributions from the trust that constitute income." (AR 18). Relying on the SSA's internal Program Operations Manual System ("POMS"), the ALJ determined that although the trust meets the requirements of POMS SI 01120.203(B)(2) to be considered a pooled special needs trust, Plaintiff had countable income as his loan agreement with the trust "is not a bona fide loan agreement pursuant to POMS SI 01120.220." (AR 18.)

Starting from the implicit, unstated premise that the loan was an informal loan, the ALJ pointed out that, according to POMS SI 01120.220, an agreement for a loan must meet all of the following criteria to be considered bona fide: (1) enforceable under State law; (2) in effect at time in-kind support and maintenance was provided; (3) contains an acknowledgement of an obligation to repay; (4) contains a plan or schedule for repayment; and (5) repayment plan must be feasible. (AR 18–19.) Assuming *arguendo* that the loan agreement met the first and second prongs, the ALJ determined that "the fourth prong of a plan or schedule for repayment, and [the] fifth prong indicating the repayment plan was feasible, are not met." (AR 19.) Although the loan agreement includes an acknowledgement of an obligation to repay, it does not provide a plan or schedule of

---

[3]    Plaintiff disputed this number during the hearing, claiming his girlfriend filled out the paperwork for him and he does not know where she got the $2,600 number, which he also referred to as $2,700. (AR 30–33.)

repayment and Plaintiff did not express an intent to repay by pledging real or personal property or anticipated future income.  (AR 19.)

Based on the foregoing, the ALJ concluded Plaintiff was ineligible for SSI benefits because of his countable income during his period of eligibility.  (AR 19.)

## III.    DISPUTED ISSUES

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

(1)    The ALJ failed to realize POMS is not binding nor sufficient authority alone to rest a decision upon; and

(2)    The ALJ failed to complete the record.

(ECF No. 14 at 2.)

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V.    DISCUSSION

### A.    Parties' Arguments

In his merits brief, Plaintiff argues that the ALJ committed reversable error by resting her entire decision on the POMS manual, which is a "mere internal agency

interpretation that is not enforceable and does not even rise to the level of regulations and therefore is given no deference whatsoever." (ECF No. 14-1 at 3.) Plaintiff claims that the "professionally managed special needs trust in this case made perfectly allowable loans to Plaintiff, its beneficiary, in monthly amounts exactly equal to SSI monthly payments while Plaintiff's SSI application was pending to pay living expenses." (*Id.*) Plaintiff asserts that "[t]hese special needs trust loans are typically paid back by the award of back benefits once SSI is approved, or paid back by deducting them from the total amount in trust if SSI is not awarded." (*Id.*) Plaintiff argues that since POMS is not binding nor entitled to any deference as it is not an officially promulgated regulation, "a decision may not be based on POMS alone without at least some discussion of how or why the ALJ decided it to be persuasive." (ECF No. 14-1 at 3–4.)

In addition, Plaintiff argues that the ALJ failed to fully and fairly develop the record. (*Id.* at 5–6.) Plaintiff argues that a simple document request or subpoena to Golden State Pooled Trust, the professional trustee, would have confirmed Plaintiff's statements that the "money from the trust were loans while waiting on the SSI application process and the monthly payments exactly equal to what SSI would pay in back-benefits which then would have to be given to the pooled trust." (*Id.* at 6.) At a minimum, Plaintiff requests that the case be remanded to obtain a proper record to review. (*Id.*)

In opposition, Commissioner asserts that the "ALJ set forth the applicable legal framework under the law governing classification of countable income and resources." (ECF No. 16 at 3.) The Commissioner argues that the ALJ properly followed the guidance at POMS SI 01120.220 because the SSA requires adjudicators at all levels of administrative review to follow agency policy, including POMS. (*Id.* at 3, 5.) The Commissioner notes that the ALJ "acknowledged Plaintiff's statements and arguments that the trust payments were a loan and not countable income," but found that the loan agreement did not include a plan or schedule for repayment that was feasible. (*Id.* at 4.) Ultimately, the Commissioner argues that the ALJ's decision must be affirmed because Plaintiff does not

24-cv-01777-W-JLB

point to any "evidence undermining the substantial evidence on which the ALJ based his valid findings." (*Id.* at 3.)

In addition, the Commissioner maintains that "the ALJ's duty to develop the record further was not triggered." (*Id.* at 4.)  The Commissioner argues that Plaintiff "offers no evidence that the trust documents in the record were incomplete or insufficient for the ALJ to decide this case," thereby triggering the Commissioner's duty to develop the record further. (*Id.*)

Lastly, in supplemental briefing ordered by the Court, Plaintiff argues that the loan was not properly treated as an informal loan but rather should have been treated as a formal loan, and the ALJ erred by failing to analyze or even mention whether the loan was formal or informal.  (ECF No. 23.)  In his supplemental brief, the Commissioner argues that the loan at issue was properly treated as an informal loan rather than a formal loan under POMS SI 01120.220 because it was not between individuals who are in the business of lending money or providing credit.  (ECF No. 22.)

## B.    Relevant Background Facts

On or about November 13, 2018, Plaintiff settled a workers' compensation claim against Robert L. Brown Construction and Cypress Insurance Company for $300,000.00. (AR 161.) An ALJ with the California's Workers' Compensation Appeals Board approved the settlement and a lump sum payment in the amount of $226,266.00, the total after deduction of certain permanent disability advances and attorney's fees.  (AR 161.)  An Addendum to the ALJ's Order Approving Compromise and Release provided that the lump sum would be paid into the "Golden State Pooled Trust" (the "Trust") for the benefit of Plaintiff.  (AR 172.)  The lump sum was deposited by the Trust on or around November 30, 2018.  (AR 159–60.)

The North Bay Housing Coalition, a California not-for-profit corporation, is the Declarant and Settlor of the Trust.  (AR 126.)  The purpose of the Trust is "to provide a system for the management, investment, and disbursement to promote each Beneficiary's comfort and happiness by providing from his or her Individual Account without causing a

loss of eligibility for needs-based benefits such as SSI, MediCal or In Home Support Services (IHSS)." (AR 127.) The Trust states that it is intended to comply with all state and federal laws and regulations related to pooled trusts for persons with disabilities, including 42 U.S.C. § 1396p(d)(4)(C) and Title 22 of the California Code of Regulations, Section 50489.9(a)(4). (AR 127.)

The Trust provides that "funds **cannot** be made payable directly to the trust beneficiary." (AR 208.) Rather, "all disbursements must be made payable to a 3rd party." (AR 208.) All unspent amounts in the account at Plaintiff's death "must be used to reimburse the State for Medi-Cal services rendered." (AR 209–12.)

In January 2019, Plaintiff entered a Loan Agreement with the Trust, in which Plaintiff agreed "to repay the Golden State Pooled Trust all funds disbursed on his behalf, from his pooled trust account, for food, shelter and other ISM items while his benefits are pending." (AR 299.) The agreement further stated that the "Golden State Pooled Trust requires repayment from [Plaintiff] of all funds disbursed from his pooled trust account for food, shelter and other ISM items on his behalf while his benefits are pending." (AR 299.) Repayments were to be made to Plaintiff's pooled trust account. (AR 299.) Beginning in January 2019, the Trust directly paid for certain of Plaintiff's bills[4] and made loan payments to Plaintiff in the monthly amount of $931.72. (AR 183–203, 256–94.) The payments, which were made directly to Plaintiff by check, were identified as a "Beneficiary Loan" on the Trust's account statements. (AR 183–203, 256–94.)

On or about October 14, 2021, prior to Appeals Council review, Plaintiff and the Trust entered a Revised Loan Agreement. (AR 8–9, 113.) The revised agreement provides that "repayment is to begin upon the determination by SSA that [Plaintiff] is eligible to

---

[4] These bills included advisory and trust administration fees, auto insurance, gas and electricity bills, cable bill, clothing, dental, pet care, personal care expenses, debt repayments, entertainment, computer, and furniture expenses, storage, DMV, and pharmacy expenses. (AR 260–95.) Additional money was paid to third parties for food, lodging, and rent. (*Id.*)

receive SSI benefits." (AR 113.) The agreement further provides that "[i]n the event the amount received is less than the amount loaned, repayment of said loan funds shall be a minimum of $25 per month or the amount borrowed divided by the number of 'years of life remaining' for the year corresponding to the individual's age and gender in the table in POMS SI 01150.005F, whichever is greater." (AR 113.)

## C.    Applicable Law

SSI "is 'a subsistence allowance' offered to the country's 'needy aged, blind, and disabled.'" *Advoc. Christ Med. Ctr. v. Kennedy*, 605 U.S. 1, 8 (2025) (quoting *Schweiker v. Wilson*, 450 U.S. 221, 223 (1981)); *see also* 42 U.S.C § 1381; 20 C.F.R. §§ 416.1100, 416.1205(c). When implementing the SSI program, Congress had dual policy concerns in mind. *Martin v. Sullivan*, 932 F.2d 1273, 1278 (9th Cir. 1990). The first policy concern "was to assist this Nation's destitute, aged, blind and disabled by guaranteeing to them a minimum level of income to meet their needs for food, clothing and shelter." *Id.* "The second, competing, goal was to preserve the fiscal solvency of the SSI program by protecting its coffers from dissipation through neglect, abuse and fraud." *Id.*

A person is eligible for SSI benefits if he or she is "aged, blind, or disabled" and has "limited income and resources." 20 C.F.R. § 416.1100. "Thus, the amount of income [a claimant has] is a major factor in deciding whether [he or she is] eligible for SSI benefits[.]" *Id.* Not all income is counted in determining eligibility. *Id.* Income, for purposes of SSI, means "anything that [a claimant] receive[s] in cash or in-kind that [he or she] can use to meet [his or her] needs for food and shelter." 20 C.F.R. § 416.1102. Likewise, resources, for purposes of SSI, means "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a).

"In the case of an irrevocable trust established by an individual, if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual . . . , the portion of the corpus from which payment to or for the benefit of the individual . . . could be made shall be considered a resource available to the individual."

24-cv-01777-W-JLB

42 U.S.C. § 1382b(e)(3)(B). Similarly, income from an irrevocable trust made to or for the benefit of the individual constitutes unearned income. 42 U.S.C. § 1382a(a)(2)(G). However, certain types of trusts are not included as resources, including special needs trusts. *See* 42 U.S.C. § 1382b(e)(5) ("This subsection shall not apply to a trust described in subparagraph (A) or (C) of section 1396p(d)(4) of this title."); 42 U.S.C. § 1396p(d)(4).

"A special needs trust is a form of discretionary spendthrift trust designed to preserve public assistance benefits for a disabled beneficiary." 15 Witkin, Summary 11th Wills § 1164 (2025). A trust that meets the requirements set forth in Section 1396p(d)(4)(C) qualifies as an excludable resource:

> (C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
>
> (i) The trust is established and managed by a nonprofit association.
>
> (ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
>
> (iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
>
> (iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(C); *see also* SSA POMS SI 01120.203, AR 18, 127, 218.

Here, the SSA has determined that Plaintiff's Trust qualifies as a special needs trust under Section 1396p(d)(4)(C) and POMS SI 01120.203(B)(2) and is therefore not counted as a resource. (AR 18.) However, the SSA contends that Plaintiff receives distributions from the Trust that constitute income as the loan agreement between Plaintiff and the Trust

is not a bona fide loan agreement.  (AR 18.)  In making this determination, the SSA relied on POMS SI 01120.220.  (AR 18.)

Generally, "[m]oney you borrow . . . is not income."  20 C.F.R. § 416.1103(f); *see also* Social Security Ruling ("SSR") 92-8P, 1992 WL 466905, at *1 (Sept. 8, 1992) ("Since inception of the SSI program, proceeds of a loan have not been considered income to the borrower because of the obligation to repay.").  In 1992, the SSA provided the following guidance in SSR 92-8P for determining whether a loan is considered income:

> 1. A loan means an advance from lender to borrower that the borrower must repay, with or without interest.  A loan can be cash or an in-kind advance in lieu of cash.  For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses. This applies to any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law.  The loan agreement may be oral or written, as long as it is enforceable under State law.
>
> 2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.  Any portion of borrowed funds that the borrower does not spend is a countable resource to the borrower if retained into the month following the month of receipt.
>
> 3. When money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes.  It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such items.

SSR 92-8P, 1992 WL 466905, at *2–3.[5]

POMS SI 01120.220 further states that if a cash loan is "bona fide," the loan agreement itself is not a resource and the cash provided by the lender is not income.  SSA POMS SI 01120.220(C)(1)(a).  If the loan is a "formal loan,"[6] the ALJ is to "[a]ssume [the]

---

[5]    "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).
[6]    "Formal loan" is not defined in POMS.

24-cv-01777-W-JLB

loan is bona fide." SSA POMS SI 01120.220(F)(2). Conversely, if the loan is an "informal loan," defined as a loan "between individuals who are not in the business of lending money or providing credit," SSA POMS SI 01120.220(D), it must meet all the following requirements to be considered bona fide:

1. **Enforceable under State law.** A bona fide loan is an agreement that must be enforceable under the applicable State law. []

2. **Loan agreement in effect at time of transaction.** The loan agreement must be in effect at the time that the lender provides the cash to the borrower. Money given to an individual with no contemporaneous obligation to repay cannot become a loan at a later date.

3. **Acknowledgement of an obligation to repay.** A loan is a cash advance from a lender that the borrower must repay, with or without interest. For a bona fide loan to exist, the lender and the borrower must acknowledge the obligation to repay. When money or property is given and accepted based on any understanding other than it is to be repaid by the receiver, there is no loan for SSI purposes.

A statement by the individual that he or she feels personally responsible to pay back the friend or relative on its own does not create a legal obligation to repay the individual who provided the cash. Similarly, the lender's statement that the borrower must only repay the cash if he or she becomes financially able to do so does not, on its own, create a legal obligation to repay.

4. **Plan for repayment.** The loan must include a plan or schedule for repayment, and the borrower's express intent to repay by pledging real or personal property or anticipated future income (such as retirement insurance benefits (RIB) benefits starting in a year when they turn 62). The claimant may use anticipated income such as Title II, Title XVI, Veterans benefits, etc., to establish a plan for a feasible repayment of the loan as long as the loan states the claimant must pay the money back.

5. **Repayment plan must be feasible**. The plan or schedule must be feasible. In determining the plan's feasibility, consider the amount of the loan, the individual's resources and income, and the individual's living expenses.

SSA POMS SI 01120.220(D) (examples and notes omitted).

///

The POMS manual is the "operating instructions for processing Social Security claims." *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003). "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either th[e] court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010); *see also Larson v. Saul*, 967 F.3d 914, 925 (9th Cir. 2020) (noting the POMS manual does not carry the force of law as it was "issued without undergoing a process analogous to legislative vetting" and it does not "approximate formal rulemaking"). However, POMS is "persuasive authority." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

"An interpretation that does not carry the force of law, . . . may still be entitled to *Skidmore* deference as long as it is not plainly erroneous or inconsistent with the governing statute." *Larson*, 967 F.3d at 925. Therefore, although POMS is not controlling, it does "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (applying *Skidmore* deference after the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) overruling *Chevron* and holding that courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous).

**D.    Analysis**

1.    <u>The ALJ Did Not Err in Relying on POMS Without Explanation</u>

Here, Plaintiff first argues that the ALJ erred by failing to discuss why she treated non-binding precedent as if binding. (ECF No. 14-1 at 4.) Plaintiff cites *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001), for the proposition that the ALJ was required to do so. (ECF No. 14-1 at 4.) In *Hart*, the Ninth Circuit discusses the concept of binding precedent in case law and the difference between controlling and persuasive authority. *Hart*, 266 F.3d at 1168–80. In the context of addressing the additional responsibility a court of appeal has when drafting an opinion for publication which will have precedential value, the *Hart* court states, "Where more than one rule could be followed—which is often

the case—the court must explain why it is selecting one and rejecting the others." *Id.* at 1176. *Hart* does not impose any obligations on ALJs in Social Security cases, much less the obligation to explain why the ALJ is selecting one rule that could be followed over another. Plaintiff's reliance on *Hart* for the proposition that an ALJ commits "clear legal error" if she does not include a "discussion of why a non-binding precedent is being treated as if binding," is concerning to the Court, as it relies on language taken entirely out of context. (*See* ECF No. 14-1 at 4.)

As the Commissioner points out, the SSA requires ALJs to follow POMS to help "the agency ensure consistency across its nationwide programs." (ECF No. 16 at 5 (citing SSR 13-2P(15)(a), 2013 WL 621536, at *15 (Feb. 20, 2013).) Moreover, although POMS is not binding with the force of law, it is still "entitled to respect." (*Id.* at 4–5 (citing *Lockwood*, 616 F.3d at 1073).) As Plaintiff does not cite any legal authority requiring an ALJ to discuss her reasoning behind her reliance on POMS and does not cite any legal authority holding that an ALJ errs when she relies on POMS, the Court finds that the ALJ did not err by failing to explain why she found POMS persuasive. (*See* ECF No. 17 at 2.) Further, Plaintiff does not point to other binding or non-binding authority bearing on the issue the ALJ was deciding, such that the ALJ would have had "more than one rule [that] could be followed." *See Hart*, 266 F.3d at 1176.

Plaintiff does not argue that POMS SI 01120.220 is "plainly erroneous or inconsistent with the governing statute" and therefore not entitled to *any* deference. *See Larson*, 967 F.3d at 925. In fact, Plaintiff does not offer *any* analysis of the underlying statutory authority in support of an interpretation that is different from the guidance in POMS. Therefore, the Court will not address this point further.

2.   The ALJ Erred in her Treatment of Plaintiff's Loan

After reviewing the parties' pleadings, the Court requested supplemental briefing on an issue that was not directly addressed in their briefs. (ECF No. 20.) Specifically, the Court asked the parties to "[e]xplain why the loan at issue between Plaintiff and the Golden State Pooled Trust was properly treated as an 'informal loan' rather than a 'formal loan'

13

24-cv-01777-W-JLB

under SSA POMS SI 01120.220." (*Id.*)  Both parties filed supplemental briefs.  (ECF Nos. 22, 23.)  The Court is persuaded by Plaintiff's position that the ALJ erred by treating the loan as informal and by imposing inapplicable requirements to determine if it was bona fide.

The SSA has recognized that the Trust qualifies as a pooled special needs trust under POMS SI 01120.203(B)(2) and qualifies as an excluded resource.  (AR 18.)  Therefore, the only question before the ALJ was whether the loan was bona fide, such that the trust disbursements were not income.  SSA POMS SI 01120.200.  For purposes of determining whether a loan is bona fide, POMS distinguishes between a formal loan and an informal loan.  SSA POMS SI 01120.220.  The Court finds that the ALJ erred by treating the loan as informal, without explanation.

In June 2019, the Trust advised the SSA that Plaintiff had received a settlement, which had been "irrevocably assigned into a trust authorized under federal law at 42 U.S.C. 1396p(d)(4)(C) commonly called a Pooled Special Needs Trust."  (AR 218–19.)  The Trustee stated that the intent of the Trust was for it to be "an exempt resource for purposes of calculating eligibility for needs-based benefits, like SSI and Medi-Cal."  (AR 218.)  The Trustee further stated the ways in which the Trust structure met the requirements of POMS SI 01120.203(B)(2).  (AR 218.)

As stated in POMS,

> A pooled trust contains the assets of many different individuals, each held in separate trust accounts and established through the actions of individuals for separate beneficiaries.  By analogy, the pooled trust is like a bank that holds the assets of individual account holders.  A pooled trust is established and managed by a non-profit organization.  The pooled trust instruments usually consist of an overarching "master trust" and a joinder agreement that contains provisions specific to the individual beneficiary.

SSA POMS SI 01120.203.  Here, the Trust was responsible for investing Plaintiff's individual account funds and loaned him money to cover food, shelter, and in-kind support and maintenance "during the pendency of his SSI application that he must pay back to his

account." (AR 298.)  The monthly distributions each month for $931.72 were to "equal what his SSI maximum benefit with state contribution would be." (AR 298.)

In her decision, the ALJ—without explanation—treated this as an informal loan, despite the formal structure of the account, the documented nature of the loan, the fact that the lender was a non-profit trust formed for the purpose of managing the assets of those who qualify for benefits, and the clear intent of all parties involved to ensure that Plaintiff did not run afoul of SSA's income requirements when applying for SSI. (*See*, *e.g.*, AR 127.)  The Commissioner argues that the loan at issue is not between individuals who are in the business of lending money or providing credit and is therefore informal.[7] (ECF No. 22 at 2.)  However, the Commissioner does not provide support for his position that lending money is *not* part of the business of the Trust.  Moreover, *every* example listed in POMS addressing informal loans involves a loan between family members.  SSA POMS SI 01120.220(D)(3), (5), (E)(3)(b), (E)(7).  Requiring that loans between family members meet stricter requirements comports with one of the goals of the SSI program: to "protect[] its coffers from dissipation through neglect, abuse and fraud." *Martin*, 932 F.2d at 1278.

Given the foregoing, the Court finds that the institutional loan at issue is more akin to a loan between individuals in the business of lending money or providing credit, than to an informal loan such as those between family members.  Therefore, in the absence of further evidence to the contrary, Plaintiff was entitled to the assumption granted to formal loans, *i.e.*, that they are bona fide.  SSA POMS SI 01120.220(F).

### 3.   The ALJ Failed to Adequately Develop the Record

Lastly, Plaintiff argues that the ALJ failed to adequately develop the record. (ECF No. 14-1 at 5–6.)  Plaintiff argues the ALJ admitted in her decision that she "did not complete the record even though [she] already had documents from Golden State Pooled

---

[7]   The Court is not persuaded by the Commissioner's additional arguments that rely on POMS that are only applicable to the Denver and Atlanta regions. (ECF No. 22 at 2 (citing POMS SI DEN01120.220B and POMS SI ATL01120.220B).)

24-cv-01777-W-JLB

Trust and unquestionably knew their name and contact information and could have made a simple document request or issued a subpoena." (*Id.* at 6.)  More specifically, Plaintiff argues that the ALJ admitted "that [Plaintiff] consistently held that money from the trust were loans while waiting on the SSI application process and the monthly payments exactly equal to what SSI would pay in back-benefits which then would have to be given to the pooled trust," but the ALJ did not reach out to the Trust to confirm. (*Id.*)  Plaintiff argues the ALJ erred by failing to reach out to the Trust. (*Id.*)  For the reasons discussed below, the Court finds that, even if the loan at issue was properly characterized as an informal loan, the ALJ's failure to adequately develop the record is an alternative reason for finding error.

In her decision, the ALJ did acknowledge Plaintiff's loan claims, finding support in the record for Plaintiff's argument that he "had a loan agreement in which his trust would pay for certain items during the pendency of his application for food, shelter, and other necessities, and that [Plaintiff] is required to repay these advances." (AR 18.)  However, the ALJ still found that the loan agreement was not bona fide pursuant to POMS SI 01120.220. (AR 18–19.)  Specifically, the ALJ found that although Plaintiff's loan agreement includes an acknowledgement of an obligation to repay, it does not provide a plan or schedule of repayment. (AR 19.)  The ALJ noted that Plaintiff "did not express an intent to repay by pledging real or personal property or anticipated future income." (AR 19.)  "Because there is no plan for repayment," the ALJ determined that the feasibility of Plaintiff's plan was not determinable. (AR 19.)  Therefore, the ALJ found that Plaintiff did not establish the fourth and fifth prongs of POMS SI 01120.220(D). (AR 19.)

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  When the duty to develop the record is triggered, an ALJ may discharge the duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the

16

24-cv-01777-W-JLB

hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)). As some courts have persuasively observed, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (citations omitted). In this instance, for the reasons discussed below, the Court finds that the ALJ erred in failing to fully develop the record.

Here, the ALJ was on notice that Plaintiff had a pooled special needs trust and was receiving loan payments from the Trust while he waited for a decision on his SSI benefits. During the hearing before the ALJ, the ALJ and Plaintiff's counsel had the following exchange:

> ALJ: Let's just start the hearing and see if we end up needing any of that. Mr. Adamson, did you have an opening statement or theory of the case? I know the issue here really, the question is whether that -- those loan disbursements -- what those are, whether there's enough to -- would make [Plaintiff] ineligible by being counted as earned income.
>
> ATTY: Sure. Yeah, I mean, our position is that it's not --they're loans for you know, loans to the claimant pending because application for benefits here that are, you know, for -- you know, they're specifically for food, shelter, support. And like I said, I have submitted the loan agreement between [Plaintiff] and the trustee for repayment of those once this claim has been finalized whether it's successful or not. Back into an account with the Golden State Pool Trust.
>
> ALJ: And I don't think I have that. Is that something you just submitted was the loan repayment --
>
> ATTY: Right. Right. That's what I filed with my brief. I was, you know, I had a chance to discuss it with one of the account administrators and they were able to provide that to me and so I submitted it with the brief.
>
> ALJ: Okay. Thank you. Okay. I'll let you proceed with any opening statement you have or any questions you have for [Plaintiff].
>
> . . .

24-cv-01777-W-JLB

ALJ: Okay. And so, what we're going to -- we were going to connect in the person who was -- I'm sorry, you said it was the –

ATTY: The trustee for the Golden State Pool Trust. He's available if you feel that you would like to have any testimony from Mr. Steve Dale.

ALJ: Okay. Let's see if I have any questions. And you said, Counsel, that you submitted the loan documents with your brief?

ATTY: I did, I had sent them to your fax number, let me see, it's the 833-516-0392.

ALJ: Yes. And there's -- there's a plan for payment in place?

ATTY: There's an obligation for repayment in place once -- once [Plaintiff] knows that you know, that will come out of his application for benefits for the SSI.

ALJ: Okay. I think that that's probably sufficient then.  I'll give you that and make a determination. If I did have any questions, I'll just schedule a supplemental hearing, but I doubt -- I think probably just what you submitted will have enough information.

(AR 27–28, 35.)

The fourth prong of POMS SI 01120.200(D) provides:

The loan must include a plan or schedule for repayment, and the borrower's express intent to repay by pledging real or personal property or anticipated future income (such as retirement insurance benefits (RIB) benefits starting in a year when they turn 62).  The claimant may use anticipated income such as Title II, Title XVI, Veterans benefits, etc., to establish a plan for a feasible repayment of the loan as long as the loan states the claimant must pay the money back.

POMS SI 01120.200(D)(4) (emphasis added).  Here, Plaintiff made clear that he intended to use anticipated future income in the form of SSI benefits to pay back the loan.  His Loan Agreement further requires repayment from Plaintiff of all funds disbursed from the Trust while his benefits are pending.  (AR 299.)  In this regard, the Court notes that the Trust prohibits funds being paid directly to Plaintiff.  (AR 208.)  Therefore, these payments in the form of a check to Plaintiff could only have been made if they were in the form of loan. (*See* AR 202.)

24-cv-01777-W-JLB

The fifth prong of POMS SI 01120.200(D) requires that the repayment plan or schedule must be feasible.  POMS SI 01120.200(D)(5).  Example 2 following the fifth prong provides an example of how this works in the anticipated benefits context:

EXAMPLE 2: Feasible loan repayment based on anticipated benefits

Claimant applies for SSI disability benefits and alleges a loan:

• Claimant files for SSI on 05/13/11 and alleges his mother pays his rent of $300 each month.

• The claimant states that he must pay his mother back.  You contact his mother and she states that she has been paying her son's rent and he must pay her back.

• The claimant also states that he hopes he is approved for SSI so he can use the money to pay his mother back.

Determination:

• Both parties confirmed that repayment was not dependent on whether the claimant's financial situation improved, and

• The repayment plan is feasible because the claimant intends to use anticipated SSI benefits to pay back the loan.

SSA POMS SI 01120.220(D)(5).

The Court cannot discern any difference between the present circumstances and Example 2 provided in POMS.  Even if the ALJ did not have the Revised Loan Agreement before issuing his decision, he was in possession of the original Loan Agreement, which required Plaintiff to pay back the loan without condition.  (AR 299.)  Plaintiff's counsel confirmed during the hearing that Plaintiff was required to pay back the loan whether his SSI application was successful or not.  (AR 28.)  Plaintiff's loan agreement clearly implies, and his counsel confirmed at the hearing, that he intended to pay the loan back with anticipated SSI benefits.  (AR 35, 299.)

Other courts have recognized that a plan to repay through future benefits once awarded satisfies the requirement of having a plan for repayment.  "Plaintiff's intent to use

24-cv-01777-W-JLB

anticipated SSI benefits to pay back the loan seems to be one of few realistic options for SSI applicants and supports the determination in Example 2 that the plan is feasible." *Tennyson v. Comm'r of Soc. Sec. Admin.*, No. CV-23-00724-PHX-GMS, 2024 WL 3200699, at *3–5 (D. Ariz. June 27, 2024); *see also Michael L. v. Berryhill*, No. 3:18-CV-01115-YY, 2019 WL 3992270, at *2–6 (D. Or. Aug. 23, 2019) (finding the ALJ erred in concluding the plaintiff did not meet his burden of establishing the existence of a bona fide loan where he intended to repay the loan from his mother with his SSI benefits).

Given the foregoing, the Court finds that the ALJ erred by failing to develop the record to the extent she found that Plaintiff failed to meet all the requirements of POMS SI 01120.220.  If the ALJ had sought the clarification she needed, the Court finds that Plaintiff likely would have met even the informal loan requirements for establishing a bona fide loan.  As the ALJ did not make any findings regarding Plaintiff's disability, the Court finds remand appropriate.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall file specific written objections within **14 days** after being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2).  The objections should be captioned "Objections to Report and Recommendation."  A party may respond to the other party's objections within **14 days** after being served with a copy of the objections.  *See id.*

**IT IS SO ORDERED.**

Dated:  February 11, 2026

*Jill Burkhardt*

Hon. Jill L. Burkhardt
United States Magistrate Judge

20

24-cv-01777-W-JLB